1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESSICA BURCIAGA, et al., | CASE NO. C23-0981-KKE |
| Plaintiff(s), | ORDER GRANTING AMENDED MOTION FOR DEFAULT JUDGMENT |
| v. | |
| AAJP 2, INC., | |
| Defendant(s). | |

This matter comes before the Court on Plaintiffs' amended motion for default judgment. Dkt. No. 29. Plaintiffs Jessica Burciaga, Cielo Jean Gibson, Claudia Sampedro, and Paola Cañas filed the instant action against Defendant AAJP 2, Inc. ("AAJP 2"), alleging claims under the Lanham Act, the Washington Personality Rights Act ("WPRA"), Washington's Consumer Protection Act ("CPA"), and for negligence. Dkt. No. 1. On February 15, 2024, Plaintiffs served Defendant with the instant complaint, to which Defendant has yet to respond. Dkt. No. 21. Default was entered on December 30, 2024. Dkt. No. 28.

For the reasons below, the Court grants Plaintiffs' amended motion for default judgment (Dkt. No. 29).

## I.  BACKGROUND

Plaintiffs are models, actresses, and businesswomen who earn their livelihood promoting their images and likenesses to clients, commercial brands, and media and entertainment outlets.

Dkt. No. 1 ¶ 17, Dkt. No. 30-2 at 3 (Plaintiff Burciaga's professional background), Dkt. No. 30-3 at 3 (Plaintiff Gibson's professional background), Dkt. No. 30-4 at 3 (Plaintiff Sampedro's professional background), Dkt. No. 30-5 at 3 (Plaintiff Cañas' professional background). In 2015, after noticing a surge in the misappropriation of their images on commercial websites and social media accounts, Plaintiffs retained legal counsel to enforce their publicity rights. Dkt. No. 1 at 4. Plaintiffs claim that by 2017, "the practice of stealing Plaintiffs' image and likeness became systematic and pervasive among nightclubs and gentlemen's clubs nationwide." Dkt. No. 1 at 5. Plaintiffs state they have and continue to expend substantial effort to discover, pursue, and sue entities that misappropriate their image and likeness. Dkt. No. 1 at 5–6.

In June 2023, Plaintiffs identified their image and likeness used in Defendant's social media accounts to promote Defendant's nightclub, El Parral. Dkt. No. 1 at 6, Dkt. No. 1-1 at 2, 4–5, 7–9, 11. None of the Plaintiffs worked for, endorsed, or were associated with Defendant or El Parral. Dkt. No. 1 at 6. Rather, their images were altered—without their knowledge or consent—to give the appearance that they worked at, endorsed, or were affiliated with this nightclub. *Id.* Defendant never compensated Plaintiffs for the use of their images. *Id.* In certain cases, Plaintiffs claim that Defendant also misappropriated Plaintiffs' advertising ideas because the images it used came from Plaintiffs' social media pages, which were used for marketing, growing, and maintaining their brands. Dkt. No. 1 at 7.

Plaintiffs filed the instant action on June 30, 2023, and attempted service on August 25, 2023. Dkt. Nos. 1, 10. Plaintiffs then moved for default judgment (Dkt. No. 17), which the Court denied without prejudice. Dkt. No. 18. Plaintiffs properly served Defendant with the complaint on February 15, 2024. Dkt. No. 21. After the Court ordered Plaintiffs to show cause as to why this matter should not be dismissed for failure to prosecute (Dkt. No. 22), Plaintiffs renewed their motion for default judgment without first moving for entry of default. Dkt. No. 24. As a result,

the Court denied without prejudice Plaintiffs' amended motion.  Dkt. No. 25.  The Court directed Plaintiffs to request entry of default pursuant to Local Civil Rule 55(a).  *Id.*; Local Rules W.D. Wash. LCR 55(a)

Plaintiffs moved for entry of default on December 27, 2024 (Dkt. No. 26), and the clerk entered default on December 30, 2024.  Dkt. No. 28.  Plaintiffs then renewed their motion for default judgment on January 16, 2025.  Dkt. No. 29.

## II.   STANDARD FOR DEFAULT JUDGMENT

While courts generally prefer to decide cases "upon their merits whenever reasonably possible," the court has discretion to grant default judgment.  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  At the default judgment stage, the court "takes the well-pleaded factual allegations in the complaint," except for those related to damages, "as true."  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)) (cleaned up); *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps*, 980 F.2d at 1267.  When considering whether to exercise discretion in entering default judgments, courts may consider a variety of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of a plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure.

*Eitel*, 782 F.2d at 1471–72.  This District also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought" and other documentation depending on the relief sought.   LCR 55(b)(2).

ORDER GRANTING AMENDED MOTION FOR DEFAULT JUDGMENT - 3

"Generally, default judgment is a two-step process: first, the court determines that a default judgment should be entered; then, it determines the amount and character of the relief that should be awarded." *Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*, No. C22-0825JLR, 2023 WL 3269759, at *3 (W.D. Wash. May 5, 2023) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)). If the Court finds that Plaintiffs have established Defendant's liability, it must ensure that the amount of damages is reasonable and demonstrated by Plaintiffs' evidence. Fed. R. Civ. P. 55(b)(2); LCR 55(b)(2).

### III.    ANALYSIS

**A.    The Court Has Jurisdiction Over This Matter.**

Before entering default judgment, the Court must confirm that it has both subject matter and personal jurisdiction. *See Cheddar Creations, Inc. v. Pawico*, No. 2:20-CV-01768-LK, 2024 WL 1346856, at *2 (W.D. Wash. Mar. 31, 2024); *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (stating that the district court has an "affirmative duty to look into its jurisdiction over both the subject matter and the parties" prior to entry of default judgment).

This Court has federal question jurisdiction over Plaintiffs' false association claim arising under the Lanham Act, and supplemental jurisdiction over their state law claims under the WPRA and CPA as well as for common law negligence. 28 U.S.C. §§ 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), 1367. Additionally, this Court has personal jurisdiction over Defendant, a Washington corporation[1] with its principal place of business in Kent, Washington.[2] Dkt. No. 1

---

[1] According to publicly available information, AAJP 2, Inc. is a corporation with one member, Avelynn Yun, who lists a Washington address. *See* October 29, 2024, Initial Report for AAJP 2, Inc., Washington Secretary of State, https://ccfs.sos.wa.gov.

[2] *Id.*

ORDER GRANTING AMENDED MOTION FOR DEFAULT JUDGMENT - 4

¶¶ 6, 13; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Plaintiffs properly served Defendant on February 15, 2024, with the complaint. Dkt. No. 21.

**B.      The Court Dismisses Plaintiffs' Negligence Claim Without Prejudice.**

As an initial issue, Plaintiffs do not seek default judgment on their negligence claim and "are amenable to the Court's dismissal of this claim without prejudice." Dkt. No. 29 at 15. As such, the Court dismisses the claim for negligence without prejudice.

The Court now applies to the *Eitel* factors to Plaintiffs' remaining Lanham Act, WPRA, and CPA claims.

**C.      The First *Eitel* Factor Weighs in Favor of Default Judgment Because Plaintiffs Have No Other Recourse for Recovery.**

"On a motion for default judgment, 'prejudice' exists where the plaintiff has no 'recourse for recovery' other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014). Such is the case here. Defendant is on notice of this ongoing lawsuit, and Plaintiffs have no other legal remedy to compensate their injuries or halt Defendant's misuse other than to proceed with this action. Thus, this factor weighs in favor of granting default judgment.

**D.      The Second and Third *Eitel* Factors Favor Default Judgment Because Plaintiff States a Claim for Relief Under the Lanham Act, WPRA, and CPA.**

The second and third *Eitel* factors—the merits of the claims and sufficiency of the complaint—are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *5 (D. Ariz. Mar. 27, 2020). "The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important *Eitel* factors." *Federal Nat. Mortg. Ass'n v. George*, No. 5:14-cv-01679-VAP-SP, 2015 WL 4127958, at

1    *3 (C.D. Cal. July 7, 2015). "When a complaint sufficiently states a claim for relief, then the second

2    and third *Eitel* factors favor default judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.

3    1978).

4         In this case, the merits of the claims and sufficiency of the complaint weigh in favor default

5    judgment on Plaintiff's Lanham Act, WPRA, and CPA claims.

6         1.   <u>False Association Under the Lanham Act</u>

7         Taking the allegations in the complaint as true, Plaintiffs sufficiently stated claims for relief

8    against Defendant for false association, and the second and third *Eitel* factors weigh in favor of

9    default judgment on this claim.

10        Plaintiffs' first cause of action arises under § 43 of the Lanham Act. Dkt. No. 1 at 14. This

11   section provides two bases for liability: "(1) false representations concerning the origin,

12   association or endorsement of goods or services through the wrongful use of another's distinctive

13   mark, name, trade dress or other device ('false association'), and (2) false representations in

14   advertising concerning the qualities of goods or services ('false advertising')." *Corp. of Gonzaga*

15   *Univ. v. Pendleton Enterprises, LLC*, 55 F. Supp. 3d 1319, 1326 (E.D. Wash. 2014) (citing *Waits*

16   *v. Frito–Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992), *abrogated on other grounds by Lexmark*

17   *Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Here, Plaintiff asserts a

18   false association claim. Dkt. No. 1 at 14. To succeed, Plaintiff must first show that "the

19   defendant's misuse of a trademark or other distinguishing device confuses consumers as to the

20   origin, approval, or endorsement of the product." *Rescue v. Walters*, No. C20-5700JLR, 2021 WL

21   22591, at *8 (W.D. Wash. Jan. 4, 2021) (citing *Waits*, 978 F.2d at 1108). Then, Plaintiffs must

22   prove that Defendant's misuse proximately caused injury to their commercial interest in sales or

23   business reputation. *Id.* at *9; *Lexmark*, 572 U.S. at 137.

24

1
2
3
4
5
6
7
8
9
10
11
12

Plaintiffs have established the elements for a false association claim. The complaint and Plaintiffs' attached declarations and exhibits show that Defendant used their images on promotional social media posts for El Parral to attract clientele and generate revenue. Defendant did not employ Plaintiffs, provide compensation, or seek consent from these individuals to use their images. This unapproved use was likely to cause confusion or deceive viewers into believing that Plaintiffs worked at, endorsed, or were affiliated with El Parral and the advertised events. Plaintiffs assert that this representation is false, and that no Plaintiff had ever been employed at or affiliated with El Parral or Defendant. As a result of this misuse, Plaintiffs were denied the fair market value of Defendant's use of their images in promotional, marketing, and advertising media. Additionally, Plaintiffs allege that Defendant deprived them of control over their career and forced them to endorse a brand they did not agree with. Thus, the merits of Plaintiffs' Lanham Act claim and the sufficiency of the complaint here weigh in favor of default judgment.

13

    2.  <u>WPRA Violations</u>

14
15
16
17
18
19
20
21
22

The Washington Personality Rights Act provides that "[e]very individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness." WASH. REV. CODE § 63.60.010. To show infringement on their personality rights, Plaintiffs must show that Defendant used "a living or deceased individual's or personality's name, voice, signature, photograph, or likeness…for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations…without written or oral, express or implied consent of the owner of the right," regardless of whether Defendant did so for profit. WASH. REV. CODE § 63.60.050; *see also* WASH. REV. CODE § 63.60.060 (authorizing a cause of action for infringement of personality rights); *Rescue*, 2021 WL 22591, at *9.

23
24

Plaintiffs sufficiently alleged a WPRA violation. As previously described, Defendant incorporated each Plaintiff's image into advertisements for the nightclub's services without

authorization or consent from Plaintiffs, leading to injury to Plaintiffs' professional brand.  These allegations fall squarely into the WPRA's scope.  *C.f. Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 861 (W.D. Wash. 2023), *aff'd*, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024) (dismissing a WPRA claim because plaintiffs did not allege that the advertisements contained their voices).  Accordingly, the second and third *Eitel* factors favor default judgment on Plaintiffs' WPRA claim.

    3.  <u>CPA Violations</u>

To succeed under Washington's unfair competitive law (known as the Consumer Protection Act), Plaintiffs must prove five elements: "(1) an unfair or deceptive act or practice that (2) affects trade or commerce and (3) impacts the public interest, and (4) the plaintiff sustained damage to business or property that was (5) caused by the unfair or deceptive act or practice." *Keodalah v. Allstate Ins. Co.*, 449 P.3d 1040, 1047 (Wash. 2019) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)); WASH. REV. CODE ch. 19.86.

First, to establish a "deceptive" act or practice, Plaintiffs must show that Defendant's act or practice "had the capacity to deceive a substantial portion of the public." *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 894 (Wash. 2009) (en banc).  Plaintiffs have met their burden here.  Defendant's advertisements had the capacity to deceive a substantial portion of the public because a consumer could reasonably expect that because Plaintiffs appeared in El Parral's promotional materials and advertisements, they worked at or endorsed the club.  Second, Defendant posted these advertisements on its public website and social media accounts, misleading the public concerning Plaintiffs' affiliations and affecting Defendant's business.  Thus, the second and third CPA elements are also satisfied.  Lastly, Plaintiffs meet the last two elements because they have presented expert testimony showing the injury caused to their brand reputation and by

Defendants' failure to provide fair compensation. Dkt. No. 30-1 (Declaration of Stephen Chamberlin). Therefore, the second and third *Eitel* factors favor default judgment on Plaintiffs' CPA claim.

### E.    The Fourth *Eitel* Factor Favors Default Judgment Because the Damages Sought Are Proportional to the Harms.

*Eitel*'s fourth factor requires the Court to consider "whether the amount of money requested is proportional to the harm caused." *Sun Life Assurance Co. of Canada v. Est. of Wheeler*, Case No. C19-0364-JLR, 2020 WL 433352, at *4 (W.D. Wash. Jan. 28, 2020). If the amount is reasonable, then default judgment is warranted. *Walters v. Statewide Concrete Barrier, Inc.*, Case No. C-04-2559 JSW MEJ, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006). In examining this factor, "the Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Marshall Wealth Mgmt. Grp., Inc. v. Santillo*, Case No. 18-CV-03510-LHK, 2019 WL 79036, at *7 (N.D. Cal. Jan. 2, 2019).

Here, Plaintiffs seeks an award totaling $320,000.00. Dkt. No. 29 at 16. Plaintiffs submitted testimony from Stephen Chamberlin, a modeling industry expert. Dkt. No. 30-1. Mr. Chamberlin served as an agency director at LA Models Management, founded a talent agency known as Warning Management, Inc., and has worked as a model and talent agent since 1989. *Id.* at 2–3. Mr. Chamberlin attests that he possesses knowledge and experience in the model and talent industry, and is versed in the economics underlying image use, image valuation, model and public personality career valuation, and the effective rates in this industry. *Id.* Part of his work includes quoting, negotiating, and overseeing rates for his clients. *Id.*

After reviewing the complaint and attached exhibits, as well as each Plaintiff's professional brand and usual client type and caliber, he evaluated the compensation each Plaintiff should have received for the use of her images by Defendant. Dkt. No. 30-1 at 4–6. To determine damages

for each Plaintiff, he considered Defendant's image use, advertised services, and distribution methods. *Id.* at 6. He also examined each Plaintiff's payment history, work quality, experience, exposure, and career duration. *Id.* at 6–9. He did not calculate the damage to reputation or loss of clients and advertisers by Plaintiffs being associated with Defendant's business. *Id.* at 5. Mr. Chamberlin provided the estimated damages for each Plaintiff:

| Model | Day Rate | # Images | Usages<br>*A = Advertising,<br>SM = Social Media* | Damages |
|---|---|---|---|---|
| Jessica Burciaga | $10,000 | 1 | A, SM | $140,000 |
| Cielo Jean Gibson | $7,500 | 1 | A, SM | $30,000 |
| Claudia Sampedro | $7,500 | 1 | A, SM | $75,000 |
| Paola Cañas | $7,500 | 1 | A, SM | $75,000 |
| TOTAL | | | | $320,000 |

*Id.* ¶¶ 17, 20, 23, 26, 27. In separate declarations, Plaintiffs also provided testimony describing the harm they suffered. Dkt. Nos. 30-2 ¶¶ 16–17 (Burciaga), 30-3 ¶¶ 16–17 (Gibson), 30-4 ¶¶ 16–17 (Sampedro), 30-5 ¶¶ 16–17 (Cañas).

Accordingly, the Court finds that the sum of money at stake favors default judgment. Mr. Chamberlin has served as a valuation expert in this industry in at least one other action. *See Lopez v. Meyers' G.M. Enterprises, Inc.*, No. 21-CV-657-WMC, 2023 WL 5928274 (W.D. Wis. Sept. 12, 2023). That other case involved copyright infringement, in which models' photographs were used without authorization in advertisements for a nightclub. *See id.* The Court denied the motion to exclude Mr. Chamberlin, finding that though his opinions "are obviously open to criticism," he "lays out his method for calculating damages" and "specifically explains why he multiplied the damages for additional use." *Id.* at *3. Mr. Chamberlin did the same here. Therefore, the Court concludes that the amount at stake is reasonable and sufficiently supported by testimony from the Plaintiffs and their expert.

1

**F.      The Possibility of Dispute Favors Default Judgment.**

2          The fifth *Eitel* factor—the possibility of dispute over material facts—also favors entry of

3  default judgment.  Generally, after "default has been entered, courts find that there is no longer the

4  possibility of a dispute concerning material facts because the court must take the plaintiff's factual

5  allegations as true." *Illumination Arts*, 33 F. Supp. 3d at 1212.

6  **G.      The Default Was Not Likely Due to Excusable Neglect.**

7          The sixth *Eitel* factor—whether default may have been the product of excusable neglect—

8  weighs in favor of default judgment here.  In the default judgment context, there is no excusable

9  neglect where a defendant is "properly served with the Complaint, the notice of entry of default,

10  and the papers in support of the default judgment motion." *Getty Images (US), Inc. v. Virtual*

11  *Clinics*, No. C13-0626JLR, 2014 WL 358412, at *5 (W.D. Wash. Jan. 31, 2014) (cleaned up).  In

12  this case, Defendant was properly served on February 15, 2024, with the summons and complaint.

13  Dkt. No. 21.  Moreover, there is no evidence in the record to suggest that the default was a product

14  of excusable neglect.  Thus, this factor favors entry of default judgment.

15  **H.      The Policy of the Federal Rules of Civil Procedure Does Not Preclude Default**

16           **Judgment.**

17          The seventh *Eitel* factor—the policy favoring resolution of disputes via contested

18  litigation—weighs against entry of default judgment.  This factor is outweighed by the other

19  factors, however, and default judgment is not precluded based on this policy.  *See Empl. Painters'*

20  *Trust v. Dahl Constr. Servs., Inc.*, No. C19-1541-RSM, 2020 WL 3639591, at *4 (W.D. Wash.

21  July 6, 2020) (finding "that in instances where a defendant's failure to appear makes a decision on

22  the merits 'impractical, if not impossible,' any preference for deciding cases on the merits 'does

23  not preclude a court from granting default judgment.'") (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*,

24  238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).

ORDER GRANTING AMENDED MOTION FOR DEFAULT JUDGMENT - 11

**I.     Actual Damages Are Warranted.**

Plaintiffs request $320,000.00 in actual damages for Defendants' failure to compensate them for use of their images.  Courts calculate actual damages by "the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement."  *Getty Images*, 2014 WL 358412, at *6 (quoting 3 M. NIMMER, NIMMER ON COPYRIGHT 14.02, 14-6 (1985)).  The Ninth Circuit defines market value as "what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work."  *Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985).  To succeed on a default judgment motion, Plaintiffs must present "some evidence" of actual damages.  *Getty Images*, 2014 WL 358412, at *6.

As discussed above, $320,000.00 constitutes the compensation Plaintiffs should have received for their services.  It does not include estimates of harm to their brand or impact on their future career development, and Plaintiffs do not seek prejudgment interest on their actual damages.  The Court is satisfied, through Plaintiffs' supporting testimony and declarations, that $320,000.00 appropriately compensates them for Defendant's wrongful conduct.

**J.     The Court Grants Plaintiffs' Request for a Permanent Injunction.**

Plaintiffs request a permanent injunction under the Lanham Act, enjoining Defendant from using Plaintiffs' images to promote "any club, via any medium."  Dkt. No. 1 at 20.  For the Court to grant a permanent injunction, a plaintiff must demonstrate that: (1) it has suffered irreparable injury; (2) the remedies available at law are inadequate; (3) a remedy in equity is warranted, considering the hardships imposed on the parties; and (4) a permanent injunction would not be contrary to the public interest.  *See Reno Air Racing Assn v. McCord*, 452 F.3d 1126, 1137 n.11 (9th Cir. 2006).  The injunction must be narrowly tailored to remedy only the specific harms demonstrated by a plaintiff.  *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004).

Based on the complaint's allegations, Plaintiffs have shown that they are entitled to permanent injunctive relief against Defendant. "[O]nce infringement is shown, irreparable injury is generally presumed in a trademark case." *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012); *see also* 15 U.S.C. § 1116 ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction"). Thus, as to the first factor, the Court presumes irreparable injury and does not find evidence rebutting that presumption. Defendant has failed to appear, and its conduct harmed Plaintiffs' brand and resulted in lost compensation. Moreover, the Court can assume that Defendant's failure to appear "suggests that [it] will continue to infringe on Plaintiff's [image], which will erode Plaintiff's ability to enforce its exclusive rights." *Lions Gate Films Inc. v. Saleh*, No. 2:14-CV-06033-ODW-AGR, 2016 WL 6822748, at *6 (C.D. Cal. Mar. 24, 2016); *see also Amazon.com Inc. v. Robojap Techs. LLC*, No. C20-694 MJP, 2021 WL 5232130, at *4 (W.D. Wash. Nov. 10, 2021).

Next, legal remedies are inadequate here. The damage to Plaintiffs' brand reputation is not easily calculable or compensable. And absent an injunction, should Defendant continue to infringe on their rights, Plaintiffs would have no choice but to return to court and file additional lawsuits. *See Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104–05 (9th Cir. 1994).

The balance of hardships also supports a permanent injunction. Defendants could continue to misuse Plaintiffs' images in online advertisements, which poses a hardship for Plaintiffs. And Defendant does not have a legitimate interest in misappropriating Plaintiffs' images. "Any hardship Defendan[t] suffers from being required to comply with their statutory…duties cannot weigh in their favor." *Rebecca Bamberger Works, LLC v. Bamberger*, No. 24-CV-706 JLS (DDL), 2024 WL 2805323, at *49 (S.D. Cal. May 31, 2024).

Lastly, entering a permanent injunction would serve the public interest because such relief protects rights over identity and image, as well as minimizes consumer confusion. *See Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014); *see also* 11A Charles A. Wright et al., *Federal Practice and Procedure* § 2948.4 (3d ed. April 2023 Update) ("A federal statute prohibiting the threatened acts that are the subject matter of the litigation has been considered a strong factor in favor of granting a preliminary injunction.").

## IV.   CONCLUSION

For these reasons, the Court GRANTS Plaintiffs' amended motion for entry of default judgment. Dkt. No. 29. The Court also permanently ENJOINS Defendant from using Plaintiffs' images or likenesses in Defendants' advertising to promote any club, via any medium.

Plaintiffs are awarded $320,000.00 in principal damages.

Dated this 10th day of February, 2025.

Kymberly K. Evanson
United States District Judge